UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARIA BILECKI,

                              Plaintiff,

v.                                                    5:15-CV-1045
                                                      (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON                       STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                           ROBERT R. SCHRIVER, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Maria Bilecki

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 10, 14.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is

granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on April 15, 1963, and was 25 years old on the alleged disability onset date. Plaintiff has at least a high school education and no past relevant work. Generally, Plaintiff's alleged disability consists of post-traumatic stress disorder ("PTSD"), depression, anxiety, right ulnar nerve entrapment, and obesity.

### B.    Procedural History

On December 31, 2012, Plaintiff applied for Disabled Widow's Benefits. On May 1, 2012, Plaintiff applied for Supplemental Security Income. Both applications alleged disability beginning March 6, 1989. Plaintiff's applications were initially denied on July 30, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On April 15, 2014, Plaintiff appeared in a video hearing before the ALJ, Julia Gibbs. (T. 31-59.) At the hearing, Plaintiff amended her alleged onset date to May 1, 2012. On July 25, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-30.) On July 24, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 15-26.) First, the ALJ found that Plaintiff met the non-disability requirements for disabled widow's benefits under the Social Security Act, the prescribed period ends on October 31, 2018, and Plaintiff has not engaged in substantial gainful activity since May 1, 2012, the amended alleged onset date. (T. 15.) Second, the ALJ found that Plaintiff's obesity, neuropathy, lumbosacral neuritis, right deQuervain's tenosynovitis, carpal tunnel syndrome,

anxiety, post-traumatic stress disorder ("PTSD"), and depression are severe impairments, but

that Plaintiff's chronic obstructive pulmonary disease ("COPD"), hypertension, hyperlipidemia,

tobacco use, insomnia, and dermatitis are not severe impairments.[1]  (T. 16.)  Third, the ALJ

found that Plaintiff's severe impairments, alone or in combination, do not meet or medically

equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings").  (T.

16-17.)  The ALJ considered Listings 1.00 (musculoskeletal system impairments), 1.02 (major

dysfunction of a joint(s)), 1.04 (disorders of the spine), 11.00 (neurological impairments), 12.04

(affective disorders), and 12.06 (anxiety-related disorders).  (*Id.*)  Fourth, the ALJ found that

Plaintiff has the residual functional capacity ("RFC") to perform

> unskilled work at a light level of exertion (as defined in 20 C.F.R.
> 404.1567(b) and 416.967(b))[2] that does not require the following:
> many changes in work routine from day to day, interacting face-to-
> face with the general public or more than superficial interaction with
> coworkers and supervisors; and that allows for the occasional
> inability to use the right dominant hand for fingering and grasping.

(T. 19-24.)  Fifth, the ALJ found that Plaintiff has no past relevant work.  (T. 24.)  Sixth, and

finally, the ALJ determined that there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform.  (T. 25-26.)

### D.    The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts three arguments in support of her motion for judgment on the

pleadings.  First, Plaintiff argues that the ALJ (1) failed to afford controlling weight to the

---

[1]    The ALJ stated that she considered Plaintiff's adjustment disorder in the context of her depression,
but did not include adjustment disorder as a separate severe impairment.  (T. 16.)  The ALJ further stated that she
considered Plaintiff's panic disorder in the context of her PTSD and anxiety, but did not included panic disorder as a
separate severe impairment.  (*Id.*)

[2]    Light work requires the abilities to sit for six hours, stand or walk for six hours, lift up to 20
pounds at a time, and frequently lift or carry up to ten pounds during an eight-hour workday.  20 C.F.R. §§
404.1567(b), 416.927(b); SSR 83-10, 1983 WL 31251 (1983).

opinion of treating psychologist, Theodore Nnaji, Ph.D., (2) failed to provide "good reasons" for the weight assigned to Dr. Nnaji's opinion, (3) erred in relying on Plaintiff's GAF score to discredit Dr. Nnaji's opinion, (4) should have recontacted Dr. Nnaji to resolve any ambiguity in his opinion, and (5) failed to resolve inconsistencies in the opinion of State agency psychological consultant, T. Harding, Ph.D. (Dkt. No. 10, at 4-7 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ's RFC finding is so vague that it precludes effective review and therefore constitutes error warranting remand. (*Id.* at 7-9.) Third, and finally, Plaintiff argues that the ALJ's RFC finding that Plaintiff has limitations using only one hand is not based on substantial evidence. (*Id.* at 9-10.) Within this argument, Plaintiff argues that the ALJ's RFC determination is different than the RFC presented to the vocational expert at step five. (*Id.*)

Generally, Defendant asserts three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly evaluated the mental opinions of Dr. Nnaji and Dr. Harding. (Dkt. No. 14, at 6-8 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's mental RFC determination is supported by substantial evidence. (*Id.* at 8-11.) Third, Defendant argues that the ALJ correctly found that Plaintiff has limitations in the use of her right hand only. (*Id.* at 11-13.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

**III.   ANALYSIS**

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

**A.      Whether the ALJ Erred in Assessing the Mental Opinion Evidence**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 6-8 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012).  Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion.  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

### i.  Treating Psychologist, Theodore Nnaji, Psy.D.

On March 26, 2014, Dr. Nnaji provided an opinion of Plaintiff's work-related mental abilities and limitations due to her chronic adjustment disorder with anxiety and depression, panic disorder, and dysthymic disorder.  (T. 333-37.)  Dr. Nnaji opined that Plaintiff was "unable to meet competitive standards"[3] in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; and deal with the stress of semiskilled and skilled work.  (T. 335-36.)

Dr. Nnaji opined that Plaintiff was "seriously limited"[4] in her ability to carry out very short and simple instructions; maintain attention for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict, tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; and understand, remember, and carry out detailed instructions.  (*Id.*)  Dr. Nnaji further opined that Plaintiff was "limited but satisfactory" in her ability to remember work-like procedures; understand, remember, and carry out very short and simple instructions; make simple work-related decisions; ask simple questions and request

---

[3]  The assessment form stated that "unable to meet competitive standards" means that an individual cannot satisfactorily perform the activity independently, appropriately, effectively, and on a sustained basis in a regular work setting.  (T. 335)

[4]  The assessment form stated that "seriously limited" means that an individual's ability to function in this area would frequently be less than satisfactory in any work setting.  (T. 335.)

assistance; set realistic goals or make plans independently of others; interact appropriately with the general public; and maintain socially appropriate behavior. (*Id.*) Finally, Dr. Nnaji opined that Plaintiff would not be able to engage in competitive employment. (T. 337.)

The ALJ discounted Dr. Nnaji's opinion that Plaintiff could not engage in competitive employment as it is a statement on an issue reserved for the Commissioner and therefore not entitled to controlling weight or special significance. (T. 24.) Additionally, the ALJ noted that Dr. Nnaji's mental RFC form included a Global Assessment of Functioning ("GAF") score of 65,[5] which is not indicative of severe symptoms or problems with functioning, and the checklists in the opinion were not accompanied by detailed functional examination results. (*Id.*)

First, the ALJ properly determined that Dr. Nnaji's statement that Plaintiff could not engage in competitive employment was a statement on an issue reserved for the Commissioner and not entitled to controlling weight or special significance. (*Id.*) A physician's statement that a plaintiff is disabled is a statement on an issue reserved for the Commissioner and is never entitled to controlling weight or special significance. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996); *see also Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Second, the ALJ cited other substantial evidence that was inconsistent with Dr. Nnaji's restrictive opinion, including Dr. Nnaji's own treatment notes and assessment that Plaintiff had a

---

[5]       The GAF "rates overall psychological functioning on a scale of 0-100 that takes into account psychological, social, and occupational functioning." *Zabala v. Astrue,* 595 F.3d 402, 405 n.1 (2d Cir. 2010). A GAF score of 51 to 60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers.) American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000) ("DSM-IV").

GAF score of 65, which the ALJ noted is not indicative of severe symptoms or problems with functioning. (T. 24.) Plaintiff argues that the ALJ erred by relying on a one-time GAF score to discredit Dr. Nnaji's opinion. (Dkt. No. 10, at 6 [Pl.'s Mem. of Law].) More specifically, Plaintiff noted that the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-V") no longer uses GAF ratings for mental disorders, and the SSA's Administrative Message AM-13066 advises that GAF scores should be treated as opinion evidence. (*Id.*) The Court recognizes that an ALJ cannot discount a medical provider's testimony solely because it is inconsistent with an assessed GAF score. *Marthens v. Colvin,* 15-CV-0535, 2016 WL 5369478, at *11 (N.D.N.Y, Sept. 22, 2016) (internal citations omitted). Nonetheless, "an ALJ may properly consider, among other information, whether a treating source's opinion is consistent with the GAF scores assessed by that treating source." *Hoke v. Colvin,* 14-CV-0663, 2015 WL 3901807, at *16 (N.D.N.Y. June 25, 2015) (citing *Blasco v. Comm'r of Soc. Sec.,* 13-CV-0576, 2014 WL 3778997, at *5 [N.D.N.Y. July 31, 2014]); *accord, Marthens,* 2016 WL 5369478, at *11.

Here, the ALJ did not rely on Plaintiff's GAF score alone to find that Dr. Nnaji's opinion was not entitled to controlling weight, or that Plaintiff was not disabled. (T. 16-24.) Rather, Plaintiff's GAF score was merely one factor that the ALJ cited in determining that Dr. Nnaji's opinion was unsupported and inconsistent with other substantial evidence in the record. (*Id.*) For example, the ALJ also considered Dr. Nnaji's treatment records at GFN Psychological Services that were inconsistent with his opinion, and noted that Dr. Nnaji's opinion was not supported by detailed functional examination results. (T. 22-24); *see* 20 C.F.R. § 416.927(c)(3) (stating that the more a medical source presents evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be afforded to the opinion).

The ALJ noted that, upon Plaintiff's intake examination in May 2012, Dr. Nnaji diagnosed Plaintiff with anxiety, adjustment disorder with mixed anxiety and depressed mood, depressive disorder, and bereavement. (T. 22.) The ALJ noted that, in March 2013, Plaintiff reported to Dr. Nnaji that her medications were helping and she was able to go out with friends. (T. 22-23.) The ALJ noted that, in April 2013, Plaintiff reported to Dr. Nnaji that she thought her health problems were disabling, yet in August 2013, Dr. Nnaji suggested that Plaintiff consider getting a job. (T. 23.) The ALJ further reported that, in January 2014, Dr. Nnaji advised Plaintiff to decrease the amount of medication that she was taking and use nonpharmacological intervention to deal with her anxiety and panic attacks, including breathing exercises, mindfulness, regular exercise, and self-distraction and refocusing. (*Id.*)

In sum, the Court finds that the ALJ properly applied the regulations in evaluating Dr. Nnaji's opinion. As discussed above, the ALJ considered Dr. Nnaji's professional credentials, treating relationship with Plaintiff, treatment notes, and cited inconsistencies between the opinion and other substantial evidence in the record, including Dr. Harding's opinion discussed below, pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (T. 16-24.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where a plaintiff challenged the ALJ's failure to review each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Finally, regarding Plaintiff's brief argument that the ALJ should have recontacted Dr. Nnaji to resolve any ambiguity in his opinion, the Court notes that Plaintiff's argument does not identify any potential ambiguity in Dr. Nnaji's opinion. (Dkt. No. 10, at 4-7 [Pl.'s Mem. of

Law].)  Recontacting medical providers is necessary when the ALJ cannot make a disability

determination based on the evidence of record.  20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1).

Additional evidence or clarification is sought when there is a conflict or ambiguity that must be

resolved, when the medical reports lack necessary information, or when the reports are not based

on medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§

404.1520b(c)(1)-(4), 416.920b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999);

*Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

However, reviewing courts hold that an ALJ is not required to seek additional

information absent "obvious gaps" in the administrative record that preclude an informed

decision.  *Rosa*, 168 F.3d at 79 n.5; *see also Aldrich v. Astrue*, 08-CV-0402, 2009 WL 3165726,

*7 (N.D.N.Y. Sept. 28, 2009) ("A treating physician is recontacted only in situations when the

evidence received from the treating physician or other medical sources is inadequate for the ALJ

to determine whether Plaintiff is disabled.").   Moreover, the ALJ has no duty to recontact a

source where, as here, the evidence submitted by that source is complete and there is no

indication that further contact will result in additional information.  20 C.F.R. §§ 404.1513,

416.913; *Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25,

2009).

For these reasons, the Court finds that the ALJ's assessment of Dr. Nnaji's opinion was

supported by substantial evidence and remand is not required on this basis.

### ii.     Consultative Examiner, Christina Caldwell, Psy.D.

On June 4, 2012, Dr. Caldwell performed a consultative examination of Plaintiff and

provided an opinion of Plaintiff's mental abilities and work-related limitations.  (T. 219-23.)  Dr.

Caldwell diagnosed Plaintiff with major depressive disorder, PTSD, and panic disorder.  (T.

222.)  Dr. Caldwell opined that Plaintiff was able to follow and understand simple directions and instructions, and maintain attention and concentration.  (*Id.*)  Dr. Caldwell opined that Plaintiff was limited in her ability to perform simple or complex tasks independently, learn new tasks, maintain a regular schedule, make appropriate decisions, relate adequately with others, and appropriately deal with stress.  (*Id.*)

The ALJ discounted Dr. Caldwell's opinion that Plaintiff had limitations with respect to performing simple tasks independently because Plaintiff reported to Dr. Caldwell that she could drive when necessary (though she stated that she had difficulty focusing on driving).  (T. 24.)  The ALJ discounted Dr. Caldwell's opinion that Plaintiff was limited in her ability to maintain a regular schedule because Plaintiff reported being able to take care of her personal grooming (though she testified that she sometimes neglected it), cared for pets, prepared meals daily, and performed light housework.  (*Id.*)  The ALJ afforded more weight to Dr. Caldwell's opinion that Plaintiff could maintain attention and concentration and was limited in performing complex tasks independently, making appropriate decisions, relating adequately with others, and dealing appropriately with stress, as it was consistent with her examination results and Plaintiff's treatment records.  (*Id.*)  The ALJ explained that the RFC accommodates those restrictions by limiting Plaintiff to unskilled work that does not require face-to-face contact with the general public or more than superficial contact with coworkers or supervisors.  (*Id.*)

Accordingly, the ALJ's assessment of Dr. Caldwell's opinion was supported by substantial evidence.

### iii.    State Agency Psychological Consultant, T. Harding, Ph.D.

On July 15, 2012, Dr. Harding reviewed Plaintiff's medical records and provided a narrative written opinion that Plaintiff maintains the ability to understand, execute, and remember simple instructions and work-like procedures; maintain attention and concentration

for at least two-hour intervals; adapt to changes in a routine work setting; make simple work-related decisions; sustain a normal workday and workweek; and maintain a consistent pace. (T. 272.) Dr. Harding opined that Plaintiff may have difficulty working closely with others. (*Id.*)

In Section I of the mental RFC form (the check-box portion), Dr. Harding assessed that Plaintiff was "markedly limited" in her ability to understand, remember, and carry out detailed instructions; and was "moderately limited" in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination or proximately to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (T. 270-71.)

The ALJ discounted Dr. Harding's opinion that Plaintiff had moderate limitation in maintaining concentration and persistence, and pace; and afforded more weight to Dr. Harding's opinion that Plaintiff maintained the ability to understand, execute, and remember simple instructions and work-like procedures, and could maintain attention for at least two-hour intervals, reasoning that Dr. Harding's opinion was consistent with the medical evidence in the record. (T. 23.)

Plaintiff argues that the ALJ erred by not resolving inconsistencies in Dr. Harding's opinion, and instead cherry picked the portions of Dr. Harding's opinion that supported the ALJ's decision and discounted the portions that did not. (Dkt. No. 10, at 7 [Pl.'s Mem. of Law].)

14

The Court recognizes that an ALJ cannot "cherry pick" only the evidence from medical sources that supports a particular conclusion and ignore the contrary evidence. *Bush v. Colvin,* 13-CV-0994, 2015 WL 224764, at *11 (N.D.N.Y. Jan. 15, 2015); *Royal v. Astrue,* 11-CV-0456, 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (citing, *inter alia, Fiorello v. Heckler*, 725 F.2d 174, 175-76 [2d Cir. 1983]).

However, the Social Security Administration's Program Manual Operation System instructs that the check-box portion in Section I of the mental RFC form is not an RFC assessment, but is "a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis." SSA POMS DI 25020.010(B)(1). "It is the narrative written by the psychiatrist or psychologist in Section III . . . that adjudicators are to use as the assessment of RFC." (*Id.*) Therefore, the ALJ was not required to reconcile Section I of the worksheet completed by Dr. Harding with the narrative portion of Dr. Harding's opinion provided in Section III. SSA POMS DI 25020.010(B)(1). Notably, Dr. Harding assessed that Plaintiff had moderate limitation maintaining concentration, persistence, and pace in Section I of the mental RFC form (the check-box portion), and therefore it was not part of Dr. Harding's RFC assessment. (T. 270-71.)

In any event, an ALJ does not have to adhere to the entirety of one medical source's opinion in formulating a plaintiff's RFC. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-

CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Finally, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

For these reasons, the ALJ's assessment of the mental opinion evidence of record was supported by substantial evidence, and remand is not required on this basis.

**B.** **Whether the ALJ's RFC Finding Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 8-14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

16

RFC is defined as

> what an individual can still do despite his or her limitations . . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis. A regular and continuing
> basis means 8 hours a day, for 5 days a week, or an equivalent work
> schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999). "Work-related mental activities generally required by competitive, remunerative work include the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

As discussed above, the ALJ determined that Plaintiff has the RFC to perform light unskilled work with additional limitations, including restricting Plaintiff to work that does not include "many changes in work routine from day to day . . . or more than superficial interaction with coworkers and supervisors . . . and allows for the occasional inability to use the right dominant hand for fingering and grasping." (T. 19.) Plaintiff argues that terms "many" (referencing changes), "superficial" (regarding interaction), and "occasional inability" (regarding fingering and grasping with the right hand) in the ALJ's RFC determination are undefined and so vague that the terms preclude meaningful review.

The Court disagrees and finds that the ALJ's RFC determination was set forth with "sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris*, 728 F.2d at 587. Here the Court is able to determine that the ALJ's RFC determination was supported by substantial evidence, including the mental opinion of Dr. Harding discussed above in Part III.A.iii. of this Decision and Order and the physical opinion of consultative examiner Kalyani Ganesh discussed below. Notably, Dr. Harding opined that Plaintiff *may* have difficulty working *closely* with others and Plaintiff *could adapt* to changes in a routine work setting, and Dr. Ganesh opined that Plaintiff had *no limitations* using her upper extremities. (T. 218, 271.) Any limitations in the ALJ's RFC finding that were *additional or greater* than the limitations identified by the medical opinions would not prejudice Plaintiff and therefore do not require remand. *See Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010) (finding that remand was not required when application of the correct legal principles could only lead to the same conclusion.)

Next, the Court turns to Plaintiff's argument that the ALJ's RFC finding that Plaintiff had limitations using only her right hand was not supported by substantial evidence. As an initial

matter, Plaintiff acknowledged that she alleged disability due to her *right* ulnar nerve entrapment.  (Dkt. No. 10, at 2 [Pl.'s Mem. of Law].)  Additionally, though Plaintiff did not challenge the ALJ's assessment of the opinion of treating physician Carol Ann Valentino, M.D., Plaintiff cites her bilateral carpal tunnel syndrome and Dr. Valentino's opinion to argue that the ALJ's RFC determination should have included functional limitations for her left hand as well as her right hand.  (T. 250.)

On June 9, 2012, Dr. Valentino's treatment record noted that Plaintiff was to continue with Disability as she was unable to use her hands for fine manipulation greater than a half hour. (T. 250.)  However, the ALJ explained that she did not afford great weight to this opinion as it did not indicate whether the disability was expected to persist for 12 months, Plaintiff subsequently received specialized treatment for her upper extremity impairments, and Dr. Valentino's assessment appeared to be based in part on Plaintiff's subjective complaints.  (T. 20); *see Aldrich v. Astrue,* 08-CV-0402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (finding that the ALJ was entitled to afford less than controlling weight to the opinion of a treating physician who appeared to rely on the plaintiff's subjective complaints more than any diagnostic or clinical evidence).

Moreover, the Court finds that the ALJ's RFC finding that Plaintiff did not have work-related limitations using her left hand was supported by substantial evidence, including Dr. Ganesh's opinion that Plaintiff had no limitations using her upper extremities.  (T. 218.)  Upon examination on June 4, 2012, Dr. Ganesh observed that Plaintiff had full grip strength in her hands bilaterally, and her hand and fingers dexterity was intact.  (T. 217.)  Dr. Ganesh noted that Plaintiff had a full range of motion in her shoulders, elbows, forearms, and wrists, and her joints were stable and nontender.  (*Id.*)

Regarding Dr. Ganesh's statement that Plaintiff had no gross physical limitation in use of the upper extremities, the ALJ noted that evidence received at the hearing level, including treatment records from Orthopedics East, supported a greater degree of limitation with respect to Plaintiff's right hand. (T. 23.) For example, treating source at East Orthopedics, including Denny Battista, D.O., noted that Plaintiff's deQuervain's syndrome pertained to her right side and she may benefit from an injection in the right wrist. (T. 250.) Moreover, Dr. Ganesh noted that Plaintiff had surgery on her right elbow, but not the left, and was wearing a wrist brace on the right wrist only. (T. 216-17.)

Accordingly, the ALJ explained that the RFC accommodated Plaintiff's problems with her right deQuervain's disease, neuropathy, and carpal tunnel syndrome by providing for work that allows for the occasional inability of an individual to use the right dominant hand for fingering and grasping, and work at a light level of exertion. (T. 20.) "Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects." SSR 83-14, 1983 WL 31254, at *4 (Jan. 1,1983). Therefore, the Court finds that the ALJ's RFC finding that Plaintiff did not have work-related limitations using her left hand was supported by substantial evidence.

Next, the Court turns to Plaintiff's argument that the ALJ's RFC determination is different than the RFC presented to the vocational expert at step five. (Dkt. No. 10, at 4-7 [Pl.'s Mem. of Law].) The ALJ's RFC found that Plaintiff required work that allowed for occasional inability to use the right dominant hand for fingering and grasping. (T. 19.) The RFC presented to the vocational expert at the hearing stated that Plaintiff was only able to use her right dominant hand frequently for fingering and grasping. (T. 56.)

The Social Security Administration's Program Manual Operation System indicates that the term "occasionally" in the RFC means that an activity "occurs at least once up to one-third of an eight-hour workday." SSA POMS DI 25001.001 (Medical-Vocational Quick Reference Guide). The term "frequently" in the RFC means that an activity "occurs one-third to two-thirds of an eight-hour workday." *(Id.)* Therefore, the ALJ's RFC finding that Plaintiff was *occasionally unable* to perform the activity (up to one-third of a workday), did not conflict with the hypothetical RFC that Plaintiff was *frequently able* to perform the same activity (from one-third to two-thirds of a workday). Therefore, the ALJ's differently stated RFC would not require remand in this instance. *See Zabala,* 595 F.3d at 409 (finding that remand for an error was not required when application of the correct legal principles could only lead to the same conclusion.)

For these reasons, the ALJ's RFC finding was supported by substantial evidence and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 24, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge